WALLACE LIPPINCOTT, SAMUEL FENNIMORE and others *v.*
PHILIP SOUDER.

Under the act of November, 1789, (*Rev. Laws* 104,) a survey made, after
six months' notice, within the bounds of a former survey, inspected,
approved and recorded, but containing an overplus of land, cannot prevail
against the owner under such former survey, although he may have omitted
to make a re-survey of the tract.

2. A verdict ought never to be maintained on unsound principles publicly
pronounced.

This case came before the Court on an application to set
aside the verdict, was argued at the last term by *White* and
*Armstrong* for the plaintiffs, and *Elmer* for the defendant,
and the opinion of the Court was now delivered by the
*Chief Justice.*

Upon the trial of the issue joined in this cause, which was
on a plea of frank tenement, to a declaration in trespass,
for cutting timber on lands in the township of Millville,
formerly Maurice river, in the county of Cumberland, the
defendant gave in evidence a survey made to him for 147
acres, including the premises in question, dated 12th Feb-
ruary, 1798, and approved by the counsel of proprietors on
the 6th day of November, 1811, and entered upon record in
the surveyor general's office. The plaintiffs gave in evidence
a survey made to William Hollingshead for 891 acres, dated
5th August, 1795, and approved 5th November, 1795, and
entered upon record in the surveyor general's office; and a
re-survey to said Hollingshead for two thousand five hun-
dred and ninety acres and forty-three hundredths, dated on
the 2d, and approved on the 7th of February, 1816, and
entered upon record in the surveyor general's office; and
then deduced title to themselves from the said Wm. Hol-
lingshead. The plaintiffs then examined witnesses to prove
Hollingshead's possession of the premises in question, and

that they were included in the survey and re-survey, and their lines and bounds. The defendant examined witnesses to shew that Hollingshead, at the time of the re-survey, knew of the survey to Souder, and that the survey to Hollingshead located by strict course and distance, without regard to monuments, would not include the tract surveyed to Souder. He called also two witnesses to prove, with what success I need not at present say, that Hollingshead "had been duly notified for the space of six months previous to the making of the survey, of the intention of doing thereof."

The judge in his charge to the jury, after mentioning the nature of the action and the mode in which title was claimed by the respective parties, stated to them the law of June, 1787, declaring the effect of surveys, and the law of November, 1789, respecting certain ancient surveys, and then informed them—"If you shall believe that the original survey to Hollingshead in 1795 includes the 147 acres located by Souder in 1798, and considered it unconnected with any other testimony, the title would be clearly in the plaintiff. But it has appeared in evidence, that with a few hundred acres of rights he, Hollingshead, laid claim to some thousand acres of land, and by the testimony of Charles and George Souder, that about twenty-five years ago Philip Souder at different times and places told Hollingshead that if he did not cover this land with rights, he, Souder, would take it up himself. If you believe these witnesses, your verdict will be for the defendant. A number of you have been on the view, and if you do not believe what those witnesses have so deliberately sworn, that Hollingshead never acknowledged Souder's right, and that Hollingshead's original survey being the oldest includes Souder's 147 acres, your verdict will be guilty, and you will assess the damages."

The jury gave a verdict for the defendant.

The precise ground on which this verdict was founded cannot be known. The jury may have believed that the survey of 1798 was not included in that of 1795, and if they did so, and the facts in evidence warranted the conclusion, the verdict is right. The jury may, on the other hand, have believed that it was included, but that a notification of the intent to make it, six months previously given by Souder to Hollingshead, had been shewn by two witnesses; and that the original survey really covered a large overplus of land beyond the quality for which it called; and if they so believed, it was their duty to have found for the defendant, upon the law as given them in charge. As then the verdict may rest upon such a view of the law and facts, the inquiry necessarily occurs whether under the act of November, 1789 (*Rev. Laws* 104) a survey may be made after six months' notice, within the bounds of a former survey, inspected, approved, and recorded, but containing an overplus of land, and whether such new survey can prevail against the owner under the former survey, omitting to make a re-survey of the tract. And in my opinion this question is to be answered in the negative. The first section of the act authorizes, in certain cases, the making of a survey, after notice for the time and in the manner there prescribed, but the third section declares " that nothing in this act contained shall be construed or taken to authorize any person or persons to make any survey within the certain or reputed bounds of any survey or resurvey made and entered on record agreeably to the said recited act, any large or overplus measure therein contained, notice as aforesaid given, deficiency of rights or other plea to the contrary notwithstanding."

The said recited act is that of June, 1787, (*Rev. Laws* 89) and the surveys protected are those mentioned in the 3d section, which enacts " that any survey made of any lands within either the eastern or western division of the proprietors of the State of New Jersey, and inspected and approved

of by the general proprietors, or council of proprietors, of such division, and by their order or direction entered upon record in the secretary's office of this State, or in the surveyor general's office in such division, shall from and after such record is made, preclude and forever bar such proprietors and their successors from any demand thereon, any deficiency of right or otherwise notwithstanding."

In the case before us there was a survey to Hollingshead, made and entered on record agreeably to the recited act; of this fact and the regularity in these respects of that survey, or its conformity to the requirements of that act, no dispute is made. Hence the act of 1789 did not authorize Souder to make a survey within the certain or reputed bounds of that survey;—and to meet the very circumstances we have under consideration, and to remove all controversy in this regard, the section expressly declares that any large or overplus measure contained in the certain or reputed bounds of the original survey, shall not warrant a new survey within such bounds. The just construction of the 1st and 2d sections, in my opinion, affords the same result, but they need not here be minutely or tediously scrutinized, for as if to destroy all controversy on a matter of so much interest the 3d section seems to have been added. Nor is it necessary to state to what circumstances the authority of the 1st section does extend. It is enough to ascertain, if it can be done satisfactorily, that the act does not apply to the facts before us, and beyond that limit it is neither expedient or prudent to extend our inquiries or our *dicta.* Nor can it be justly complained that the law thus understood is onerous to the proprietors. The running of lines, the fixing of boundaries, in other words, the whole location of proprietary rights, and the ascertainment of the quantity of land in any survey, were always done by themselves, or what is legally speaking the same, by their agents, the deputy surveyors and surveyor general. For they suffered no man to select his own agent; their officers he must employ; in

none others would they confide; and even when so done, the survey availed nothing until examined and ratified by themselves in council.

Without intending to yield in'any degree to decisions of the other States, or even to draw an argument from them, it may not be unprofitable to see the manner in which the subject of an excess or overplus in a survey, beyond the quantity of the warrant, has been considered in Virginia, Kentucky, Pennsylvania and the Supreme Court of the United States; which may be done in the cases of *Johnson* v. *Buffington,* 2 *Wash.* 116; *Taylor* v. *Brown,* 5 *Cranch* 249; *Lessee of Kyle* v. *White,* 1 *Binney* 246; *Lessee of Steinmetz* v. *Young,* 2 *Binn.* 523.

In as much then as the jury were left by the judge to find for the defendant, although the first survey having a considerable overplus, included the premises in question, if they believed the notification mentioned in the first section of the act of 1789, was shewn by the witnesses, which direction was in my opinion erroneous. I think the verdict should be set aside unless the obstacle interposed at the bar by the defendant's counsel which I am now to examine ought to prevail.

It is said, the counsel of the plaintiff, on the trial, considered the case within the act of 1789, contended that the new survey was within the ancient bounds, that notice was therefore requisite, but not shewn, because the witnesses were unworthy of credit, and that the Judge stated the law as claimed by the plaintiff's counsel, and hence it is argued they cannot now complain of the charge, or on that account entitle themselves to a new trial. This position is in my opinion unsound and would if sustained deprive the institution of new trial of its best attributes. It is not supported by the cases cited at the bar. In *Cox* v. *Kitchen,* 1 *B. and P.* 338, the court do not say that a new trial will not be granted where no point has not been reserved at the trial, on the contrary they very plainly hold that they may do so,

but they will then look into the general justice of the case and if as in that instance they find the defence dishonest and unconscientious they will refuse to interfere. Without· intending to deny the rule stated in this case, although it leaves so much *ad arbitrium judicis,* and deviates widely from the certainty so much sought and cherished by the common law, I think a more safe principle for general conduct was expressed in this court in *Thompson* v. *Birdsall,* 1 *South.* 172, " a verdict never ought to be maintained on unsound principles publicly pronounced." And if we are to look into the justice of the case, I do not see so much merit in the claim of Souder, who at the time he instituted measures to procure the land knew it was possessed and claimed by another man, as to feel bound to shut my eyes lest I should see its illegality. To the case of *Edmonson* v. *Machell,* read from 2 *D. and E.* 4, the same remarks substantially may be applied.

The observations of *Blackstone,* 3 *vol.* 390, are peculiarly apposite. " Causes of great importance, titles to land and large questions of commercial property, come often to be tried by a jury merely upon the general issue : where the facts are complicated and intricate, the evidence of great length and variety and sometimes contradicting each other ;· and where the nature of the dispute very frequently introduces nice questions and subtleties of law. Either party may be surprised by a piece of evidence which (had he known of its production) he could have explained or answered ;· or may be puzzled by a legal doubt which a little recollection would have solved. In the hurry of a trial the ablest Judge may mistake the law and misdirect the jury ; he may not be able so to state and range the evidence as to lay it clearly before them, nor to take off the artful impressions· which have been made on their minds by learned and experi-· enced advocates." " Granting a new trial under proper regulations cures all these inconveniencies." " The parties come better informed, the counsel better prepared, the law

is more fully understood, the Judge is more master of the subject, and nothing is now tried but the real merits of the cause."

I am clearly of opinion then that we are not to sustain a verdict founded on an erroneous view of the law, because the counsel labored under a misapprehension, and raised no question before the judge as to the applicability of the law."

One topic farther remains to be noticed. It was stated. there had been a view and a passage from Bacon's abridgment was read to shew that in such case a new trial should not be awarded without special reason. This objection would present a strong barrier, if we were examining the conformity of their verdict with the evidence before them :— but with the present question, the "vantage ground" of such a jury has no connection—for they were to receive the law as stated by the court.

                                        Verdict set aside.